# UNITED STATES DISTRICT COURT

## OF DELAWARE

2021 DEC 16  AM 10: 19

$\mathcal{S}b$

| | |
|---|---|
| CARLET DeETTA WARD, | ) |
| 201 Voshells Mill Star Hill Road | ) |
| Dover, DE 19901, | ) |
| Plaintiff | ) |
| vs. | ) |
| | ) |
| CAMDEN POLICE DEPARTMENT, | ) |
| & TOWN OF CAMDEN | ) |
| 1783 Friends Way | ) |
| Camden, Delaware 19934 | ) |
| | ) |
| WAYNE WHITE, | ) |
| 3854 Peach Tree Rd. | ) |
| Dover, DE 19901 | ) |
| | ) |
| HAROLD K. BRODE, | ) |
| DIANE M. RAGER, | ) Civil Case No. |
| KENT COUNTY LEVY COURT | ) |
| REGISTER OF WILLS, | ) |
| 555 Bay Road, Room 113 | ) |
| Dover, DE 19901 | ) |
| | ) |
| BARROS, MCNAMARA, MALKIEWICZ | ) |
| & TAYLOR, Attorneys at Law, | ) |
| 2 West Loockerman Street | ) |
| P.O. Box 1298 | ) |
| Dover, DE 19903 | ) |
| | ) |
| PATRICIA GRIFFIN, CHANCELLOR, | ) |
| SUSSEX COUNTY | ) |
| COURT OF CHANCERY, | ) |
| 34 The Circle | ) |
| Georgetown, DE 19947 | ) |
| | ) |
| LESTER JOHNSON, INVESTIGATOR | ) |
| c/o DELAWARE STATE ATTORNEY | ) |
| GENERAL'S OFFICE, | ) |
| 102 W. Water Street | ) |
| Dover, DE 19904 | ) |

2 1 - 17 5 8

Defendants.

Page 2.

## COMPLAINT

1.  The Plaintiff, in this complaint, Carlet DeEtta Ward, is filing this civil case under Hate

Crime Statutes by way of a jury trial in response to an incident that occurred on July 12, 2019,

when she was wrongfully denied her rights and "right of way' to her deceased parents' Estate at

148 Vining Run, Camden, Delaware as a beneficiary and, as an inheritance. Carlet and her

brother, Michael Council, was named as their beneficiary and, shared in the responsibility of

their inheritance. Ms. Ward is claiming that she was severely discriminated against while her

civil rights were violated and she was victimized under Hate Crime Statutes. Plaintiff had placed

a 911 call into the Camden Police Department for assistance to have an unauthorized trespasser,

a realtor, Karen Waters of ReMax Horizon, removed from her parents' driveway who was trying

to sell the home that she, her brother had inherited. The Camden Police Department responded

to the call. While in discussion, another car pulled up to the scene. They were also identified as

the suspects who were responsible for the death of their Mother, Mrs. Thelma D. Council. She

asked the Police Officers to protect her from them. They were her relatives who had run afoul of

the law. Instead, the Camden Police Department wrongfully pulled Ms. Ward off the porch and

removed her from the premise and continued to pull her into an awaiting police cruiser.

2.  The three officers who responded to the 911 call were white males, Chief of

Police Whitney; Officer Hartman; and, Deputy Chief of Police, Bob Fenelius. Officer Hartman

who drove the cruiser became hostile and drove me home to retrieve the real estate company's

"For Sale" sign that they had illegally and, without authorization, placed on the front yard. The

beneficiaries had no immediate plans to sell their inheritance home. As a result of the Camden

Page 3.

Police Department's racist act and behavior – they were able to illegally set up house at their parents' estate and, with unauthorized occupants.

3.  The Plaintiff states that she and her brother became the heirs after when their Father's (Step-Father) life was cut short on April 05, 2019.  Mr. Council was funeralized on April 19, 2019 after an autopsy was performed.  It was believed that Mr. Council was hit over the head from behind and stumbled out the door and fell to his death.  There was no mentioning of the blow on his death certificate.  Their Mother, Mrs. Thelma D. Council, Kenneth's wife, preceded him in death when her life was also cut short on October 17, 2010.  Mr. Council was a United States Air Force and Viet Nam Veteran in the military.

4.  Mr. Council's Will and Testament specifically named the Plaintiff and her half-brother, Michael L. Council, as the beneficiaries of their (his) Estate at 148 Vining Run, Camden, Delaware located at the newly Pharsalia Housing Development.  The 2-story custom built house has 5 bedrooms and 3-1/2 baths, a gas fireplace, a 2 car garage, a basement and, an attached screened-in porch on the right side with a patio.  Also, living with the Councils' was Mr. Council's Mother, Mattie Morris.  Both Kenneth and Thelma were her caregivers since 1993.  She was 98 years old when she died in February, 2010.   It must be noted that all three of them and the Plaintiff was born in a "Brown vs. Board of Education" state – Kenneth and Mattie, from South Carolina and, Thelma and Carlet, from Delaware.  And, that the plaintiff briefly lived with her parents from September, 2003 to May 2005.  The Town of Camden has a large population of

Page 4.

known residents are known to be tied to the Confederacy; neo-Nazis; and, Skin Heads hate

groups who relocated to Delaware from the State of West Virginia.  Both parents, Mr. and Mrs.

Council, were longtime members of the NAACP Civil Rights Group in Western Massachusetts

as well as being very active in their Christian faith as Baptist.  Ms. Ward, herself, was a Former

NAACP Branch President also, in Western Massachusetts, a Baptist and, a community and social

justice activist.  Both Mrs. Council and Ms. Ward are both natives of Delaware.  Thelma was

born in Camden, Delaware and, Ms.  Ward, the plaintiff, was born at Dover Air Force Base in

Delaware.  The plaintiff's mother (formerly Thelma D. Ward) and father divorced and, in 1970,

she got remarried to Kenneth Council and, they moved away to another Air Force Base in

Western Massachusetts.  After retirement they both relocated back to Mrs. Council's home state

in Delaware in 2003.  Both Mrs. Council and the Plaintiff are both Bi-racial, being of African-

American and Native American Indian heritage and descent.  The plaintiff is 65 years old and,

female.


5.  The plaintiff states that she believes that events that led up to the 911 call actually began

back in the summer of June 2009.  The plaintiff went on an early quest to campaign and run as a

2010 Candidate for the U.S. Senator in the State of Delaware.  By December, she was registered

as a Republican Candidate for that seat.  She became the first person of color to register and run

for that seat in the State of Delaware.  By July, 2010, she withdrew from running due to little to

no interest and/or, campaign fundraising even though she had held several political campaign

rallies throughout the state.  The plaintiff believes that she was a victim of white political

repression because of her race, color and ethnicity.  It should be noted that shortly thereafter, on

Page 5.

October 17, 2010, her mother was given a lethal dose of medicine that took her life at a Milford Hospice Facility – just one month before the General Elections in November. After Mr. Council's Will and Testament was made available, and both the plaintiff and her brother, Michael, was named as the heirs (beneficiaries) the plaintiff's brother and a relative, Royal Mack (Mr. Council's cousin) was in the process of cleaning out the house and securing the deceased private matters as well as going through what was left of both Mrs. And Mr. Councils' possessions.

6. On or, about July 9th or 10th, her brother, Michael, contacted her and asked her to help him with the remaining clean-up work in the house because he was too exhausted to do anymore. Ms. Ward had been working two jobs while her brother was unemployed and, he had tired from the funeral and clean-up and needed a helping hand. She said yes and that she would need the key to the house to get in.

7. Michael sent over a key to his sister, Carlet, via their cousin, Gloria Potts. When the plaintiff first went over to the estate with the key, the key didn't work and, she found a "For Sale" sign on the front lawn. The plaintiff then took down the sign and took it with her over to the Camden Police Department to report it. The front desk Officer identified herself as "Bernadette" who stated that she was familiar with the situation at 148 Vining Run. They talked briefly about another non-relative Wayne White, who is strongly believed to be a self-appointed "executor" on her Step-father's Will from a "fraud by trickery" attempt and, was told by Officer Bernadette that his role and/or his responsibility as executor was over and, that all he had to do

Page 6.

was turn the property over to the beneficiaries of the property and, instructed the plaintiff to get

an attorney to execute the will.  But she also told the plaintiff that she could not leave the

RE/Max Horizon's Realty "For Sale" sign at their police station and, that she could be charged

for theft even though the realtor had trespassed onto their property and was unauthorized to put

the sign there as well as putting the property on the market for sale.

8.  The plaintiff took the "For Sale" sign with her home at 201 Voshells Mill Star Hill Road,

Dover, DE, where she had been living since 2005.  Before leaving the police department, she

informed Ms. Bernadette that she was going to get a locksmith to let her in on that Friday, July

12, 2019.

9.  On July 12, 2019, the plaintiff met with the locksmith she had hired at the property to

open the door and to change the locks.  This was done after she showed the locksmith her two

identifications – one, a State ID with the 148 Vining Run address and, the other, a State Driver's

license with her current address.  He opened the door, she inspected the house upstairs and

downstairs and in the garage while he was changing the lock on the front door.  She checked the

screened-in porch and secure the broken screen door; and, she then chained guard locked the

laundry room that lead into the garage and proceeded upstairs.  The rooms were all empty – all

furnishings were gone including downstairs in the living room, dining room and family room.

The home had been looted.  The only furnishings left was a sofa in the family room and, a

wooden furniture piece in the living room.  The closet spaces were almost completely emptied

and, private matters, files, credit cards, checkbooks, bills, clothing, etc. were gone including the

Page 7.

plaintiff's trunk that was kept in safekeeping for her by her parents in the basement. Their

father's Hyundai automobile was also gone and missing from the driveway and, their parents'

and family heirlooms were either stolen or trashed. Shortly, after the locksmith left and the

plaintiff was about to lock up and leave, is when Karen Waters of Re/Max Horizon Realty

Company pulled up into the driveway as stated that she was there to show the unsolicited

property. Carlet asked her to remove her automobile from their driveway and, to leave because

she was unauthorized as well as trespassing on the property. The heirs had no immediate plans

to sell the house. She refused to leave and, that is when the plaintiff called 911 for assistance. It

was later learned that Ms. Waters is a relative of Wayne White, the self-appointed Executor of

the will.


10. After the incident with the Camden Police Department and parties, the Plaintiff went

on a search for legal counsel to help her get their will executed. The Plaintiff retained an

attorney via signed contract and deposit with Attorney David J. Beaver of the Barros,

McNamara, Malkiewicz & Taylor, P.A. at 2 West Loockerman Street, Dover, Delaware. Due to

the urgency of the situation that had occurred at Ward's parents' home, she was in need of an

immediate injunction in order to prevent the unauthorized parties to take possession of or, have

them removed from the property at 148 Vining Run. Attorney Beaver, in a face-to-face meeting

indicated that the violators wouldn't be able to close on the house if they try to sell it without the

plaintiff's authorization. Meanwhile, the law firm failed to get the injunction and, failed to make

the necessary efforts to execute the will. Plaintiff contends that the Barros firm misrepresented

themselves and, committed a fraudulent act and will show evidence accordingly.

Page 8.

11. While the search was on for another attorney, the Camden Police Department and their

parties had already set up house on their property at 148 Vining Run, Camden, along with

the self-appointed executor and, their parties (squatters) creating an "adverse possession"

situation by denying and violating the heirs, Carlet and Michael, their inheritance and rights to be

beneficiaries and the owners of their parents' house and property via hostile takeover and by

force.


12. Michael, the plaintiff's brother, on numerous occasions went to the house to attempt to

get the unlawful occupants to relinquish the house and, to leave.  He was constantly being tossed

out of the house via physical force and, on one such occasion, he was physically assaulted with a

heavy blow to the stomach area and then tossed out of the house.  He had to be hospitalized for

the injuries he sustained by the Deputy Chief of Police, Bob Fenelus, who delivered the heavy

blow.  Michael had to be protected from any future injuries to be sustained by Officer Fenelus

and, from the other squatters (occupants) living in the 148 Vining Run house.


13. After an unsuccessful search attempt, the plaintiff was unable to find another attorney to

help execute the will as well as give the Camden Police Department an opportunity to resolve

and, settle the ongoing dispute without legal actions.  Meanwhile, there was a constant battle

between the plaintiff and the Kent County Levy Court Register of Wills Department.  The Estate

of Kenneth L. Council was located in Kent County.  Apparently, the Register of Wills

Department headed by Harold K. Brode and Diane M. Rager, who each decided to take up the

business of property real estate and, procedure by taking it upon themselves to put the house on

Page 9.

the market with their self-appointed executor, Wayne White, a known drug and swindling

offender from West Virginia, in efforts to settle the estate without the heirs permission for which

they, the heirs, were in their legal right to contest what the Kent County Levy Court Register of

Wills was attempting to do with their inheritance.  The Camden Police Department Deputy Chief

of Police, Bob Fenelus, had his name put on the deeds on the Estate of Kenneth L. Council at

148 Vining Run, Camden, DE 19904 for ownership and for his personal use.  And, it still

remains today.  Mr. Fenelus has since chosen to change the color of the exterior of the house's

window shutters and the front door.


14. On September 10, 2020, the plaintiff sent Mr. Fenelus a certified letter, receipt returned,

to him at the 148 Vining Run, Camden, Delaware address a "Cease and Desist" Order to Vacate

the premises including any or all unauthorized squatters illegally living on the premises.  A series

of code violations were cited in that letter including Title 11 Civil Rights Act of 1968, Hate

Crimes Statues – 18 U.S.C{245(b)(2); Titles 241; and, 242, Section 3631; Senate Bill 132; AND,

Title 18 – R.I.C.O. Statutes – drug trafficking and fraud.  Violations of their First, Fourth, Ninth

and Fourteenth Amendments and, for illegal use of the property.  She also cited relevant

Delaware codes and, for illegal use of the property.  She also cited relevant Delaware violation

codes numbers:  75 Delaware C.271, 1304 Title 11, 1304; {821,825,826(A),827;831(1)(2); 78

Delaware Laws C252{1}; and, 82 Delaware C215{1}.  The Camden Police Department and its

parties broke into the house to illegally enter the premise after the Plaintiff had the locks changed

and the home secured.  The certified letter was sent cc: to the Camden Police Department.

Page 10.

15. After receiving no response from Mr. Bob Fenelus or, from the Camden Police Department, the Plaintiff sent a letter along with a copy of the letter sent to Fenelus to their Mayor, Tracey Torres, at the Town of Camden located at 1783 Friends Way in Camden – the same building where the Camden Police Department is located.  The letter asked the Mayor to take charge of the situation as well as what, if any, actions will the Town of Camden be taking to correct the wrong their police department have committed due to the "adverse possession" situation at 148 Vining Run.  Between phone tags and voice messages, the plaintiff nor the Mayor was unable to connect.  The Mayor indicated that she was no longer working out of the office of the Mayor due to the Covid-19 pandemic.


16. On or about April or May, 2021, the Plaintiff made a last effort and, or attempt to retain an attorney to assist with the estate's conflict but to no avail.  The plaintiff had resorted to calling on attorneys who specialized in Alternative Resolutions.  Because of that, she telephoned the Camden Police Department to ask to speak to Bob Fenelus, who, at the time was the Deputy Chief of Police and was told that there was no one there by that name.  She has spoken with both Officers Hartman and Bernadette.  She then proceeded to ask to speak to the Chief of Police, Whitney, who was not there at the time.  Both Officers Bernadette and Hartman responded to her phone call.  The plaintiff asked for Bob's phone number so that she could make arrangements to meet with him on neutral grounds due to his past abusive and violent tendencies and acts of physical violence behaviorism.  Both refused to cooperate with that request.

Page 11.

17. The plaintiff then attempted to get the phone number from the Mayor's Office but
to no avail. She received no response to her request after leaving a voice message on the
Mayor's answering machine.

18. Because the Plaintiff had originally filed a complaint with the Delaware Department
State Attorney General's Office back in 2010 after her mother, Thelma D. Council 's life was cut
short under suspicious conditions, a list of offenders and, relatives who were known drug related
criminals was given to Lester Johnson, an Investigator, with the State Attorney's General Office
in Dover, Delaware. The plaintiff was seeking criminal charges for the death of her mother. The
State Attorney's Office, after several meetings with Mr. Johnson and the Milford Police
Department, and, after conversations with the Attorney General, it was determined that a
"wrongful death" could be pursued by the State. After several months had surpassed, nothing
came out of that decision. The Attorney General at the time was Joseph Robinette Biden, III.

19. The Estate of Kenneth L. Council was also unlawfully occupied by those very same
individuals whose names were on the list provided to the State Attorney's General's Office in
violation of the beneficiaries' rights including Mr. Wayne White, the self-appointed executor of
the Estate. The plaintiff has no way in inspecting the current condition of the house's interior
without cooperation from the occupant, their law enforcement and, the courts.

Page 12.

20.  The plaintiff contends that in the case involving the Sussex County Court

Of Chancery whose Chancellor presiding was Ms. Patricia Griffin, the plaintiff made the

determination that their involvement in the property dispute with the Kent County Levy Court's

Register of Wills was out of jurisdiction.  The Plaintiff lives in Kent County and wished to

remain in that county for legal recourse and resolution.  The plaintiff also contends that she never

made any such request to have her case venue to another county and, therefore refused to take

part in their hearings.  The Chancellor took it upon herself to conduct a hearing in this case

without authorization from the Plaintiff and, was found to have had a personal conflict of interest

in her meddling of the Plaintiff's fight with the Kent County Levy Court's Register of Wills

Department which could have resulted in a very hostile and a negative outcome from

Georgetown and in the courtroom setting.


21. Plaintiff states that while she was undergoing constant disputes with the Register of Wills

Department at Kent County Levy Court, she made several efforts and attempts to make contact

with the Federal Bureau of Investigation (FBI) who jurisdictionally handles hate crimes

throughout the country but had trouble getting through.  This was a time when there was no

access to our federal offices because they were each demobilized and unable to respond or,

handle complaints during the COVID-19 pandemic.  She then contacted a Washington D.C.

Office of Civil Rights and was able to get through when a man answered the phone.

Page 13.

Although their office didn't handle hate crimes complaints relative to housing issues, the person who took her call was willing to forward along her complaint to the FBI and, he did.

Still, there was no response and no contact made between the plaintiff and the FBI. The plaintiff also emailed and called the Southern Poverty Law Center who are experts on hate crimes complaints but again, due to the pandemic, their offices were temporarily closed. Only an email option was available through this period of demobilization and/or due to no access during this pandemic. No follow-up response was received.

22. The plaintiff also states that she had a witness to the 7/12/19 incident that took place at 148 Vining Run, Camden, Delaware. He was a white male from the Delaware State Police law enforcement dressed in uniform. While she was being pulled from the house and into the car she asked the Officer if he could do something and, he said no. However, that State Trooper has yet to come forward as a witness.

23. Hate crimes, according to experts, "have been found that the main determinant of hate crimes are due to be from personal prejudice or "good old-fashion" racism. Hate crimes are message crimes. They are different from other crimes in that the offender(s) is sending message to members of a certain group that they are unwelcome in a particular neighborhood or workplace." In addition, hate crimes are committed by specific hate groups:  KKK, Neo-Nazis, racist skin heads, neo-confederates, black separatist and for Christian identity – "Hate crimes are violent acts against people, property or organizations because of the group to which they belong or identify with."

Page 14.

And, because hate groups bond together against others creating their own acts of Biased-
motivated crimes – which causes victims of hate crimes to suffer severe emotional damage", it
was in the right course of action for the plaintiff to seek damages and relief from the court – the
U.S. District Court because it was the only alternative available for justice.

24. The plaintiff, Carlet DeEtta Ward, as filed under civil action, is an injured person from
all damages incurred from her losses and, from her inheritance – the property at 148 Vining Run
in Camden, Delaware as a result of the defendants' conduct in violation of her property rights as
well as for slander, defamation of character as well as framing as an innocent person of the
plaintiff.   The plaintiff, in addition to her past civil rights, community and social justice activism
and involvement, is secular (does not attend church) and, is a clean cut all- American "toothless"
female Senior Citizen who doesn't drink, smoke, or, do drugs and, has never engaged in the drug
culture world.   She has never broken the law and, has worked almost her entire life earning a
decent living.   She is a divorcee and has a son who is 43 years old and, she currently holds two
jobs in retail.   The defendants, in this case, co-conspired together to intentionally fraud the
plaintiff from her inheritance via of property swindling scandal based on bias-motivated criminal
acts and conduct while at the same time by creating a hostile "adverse possession" situation
involving a whole sleuth of unauthorized occupants (squatters) who found a collective way to
illegally misuse the property – including under R.I.C.O. Statute laws.   And, she is still
undergoing harassment where she currently resides while, just recently, she was a victim of a

Page 15.

property vandalism crime beginning on January 19, 2021 that spilled over into the next 2

consecutive days when the chimney on the house was completely destroyed and demolished

while the assailants were attempting an art heist up on the second floor window where 88

paintings are stored in a room. The plaintiff is an artist who paints and sketches. She is

currently in Superior Court seeking damages and replacement for the chimney seeking damages

in the amount of $50,000. Currently, their court is in the "fraud" mode for a judgment.


**WHEREFORE,** the **Plaintiff,** therefore, is seeking from the court via jury trial

compensatory and punitive damages in awards in the amount of $20 million dollars; an entitle to

recover and, be granted a return of property in the form of a "Replevin Demand for Judgment"

for the property at 148 Vining Run, Camden, Delaware 19934 as the rightful heir(s) to their

inheritance; recovery from being denied to secure an injunction; damages; punitive damages

and/or other appropriate relief in law and, she is asking the court to grant her, the plaintiff, the

"Town of Camden Town Hall Building at 1873 Friends Way, Camden, Delaware 19934 which

also houses the Camden Police Department and, any other building(s) for their role and

participation under Hate Crime Statutes as listed including under any R.I.C.O. Statute laws that

will apply.

Carlet D. Ward
Carlet DeEtta Ward
201 Voshells Mill Star Hill Road
Dover, DE  19901
(302) 264-1895

Signed this Date: 12/16/21